300016940

# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS

ORIGINAL

FILED-USDC-NDTX-DA
'25 MAR 25 PM 1:48

Erin Scoles,

Plaintiff,

v.   Civil Action No. 3-25CV0719-D

Justin Cox, Erick Villalobos, Nicholas Bright, Chief Shawn Fullagar of the JOSHUA POLICE DEPARTMENT; Prosecutor Amanda K. Davis, Clerk of Court Carla Bonham, Joshua, City Secretary Alice Holloway, Judge Toni Driver; and Lt. Laura Gunter, Lt. Charlie Carraway, Cpl. Bridgette Cook, Cpl. Barbara Ellerd, CO. Kynedie Pearson of Captain Gordy and Chief Blankenship of the Johnson Sheriff Detention Facility and Detective William Reilly, in their individual and official capacities,

Defendants.

JURY TRIAL DEMANDED

Plaintiff, Erin Scoles, brings this action against defendants and each of them as follows:

1

# COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

## REQUEST FOR INJUNCTION RELIEF, DAMAGES AND JURY DEMAND

### I. INTRODUCTION

This action arises from the unlawful arrest, bodily injury, humiliation, and the ongoing violation of Plaintiff's constitutional rights under the United States Constitution, which were inflicted by the Defendants under color of law. The Defendants—law enforcement officers, municipal court officials, and other individuals—engaged in unlawful practices, including violating Plaintiff's First, Fourth, Eighth and Fourteenth Amendment rights, and these violations were exacerbated by the court's failure to establish jurisdiction and their misconduct in suppressing evidence and the denial of due process.

Furthermore, Plaintiff seeks injunction relief in the form of a temporary restraining order (TRO) and permanent injunction to prevent retaliatory arrest, warrant issuance, threats or harassment by Defendants during the pendency of this action.

### II. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights).

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4) and 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1) (2) because the Defendants reside within this district, and the events giving rise to the claims occurred in this district.

### III. PARTIES

4. Plaintiff: Erin Scoles a citizen of Texas, mailing address P.O. Box 131 Keene, TX 76059.
5. Defendants are officers acting under the color of law, employed by the Joshua Police Department in the City of Joshua. Officers Justin Cox, Erick Villalobos, and Nicholas Bright.
6. Defendant Chief of Joshua Police Shawn Fullagar launched an internal affairs investigation and failed to take corrective action despite being notified of police misconduct by personally stating the defendant officers "did an admirable job".
7. Defendant prosecutor Amanda K. Davis, an attorney for Brown & Hofmeister, LLP representing the Joshua Police Department engaged in conflict of interest and continues a retaliatory prosecution despite lack of probable cause or jurisdiction.
8. Defendant Municipal Clerk of Court Carla Bonham suppressed plaintiff's filings and obstructed access to justice. Willfully threatening plaintiff to another unlawful arrest.
9. Defendants Captain Gordy and Chief Blankenship is an agent of the detention facility where plaintiff was unlawfully abused, mistreated and sexually humiliated.
10. Defendants Lt. Laura Gunter, Lt. Charlie Carraway, Cpl. Bridgette Cook, Cpl. Barbara Ellerd,and CO. Kynedie Pearson are the guards responsible for the inhumane mistreatment of plaintiff during detention at the Johnson Detention facility.

11. Defendant Detective William Reilly willfully ignored plaintiff's criminal complaint of the grotesque inhumane treatment at the Johnson detention facility.

## IV. FACTUAL ALLEGATIONS

12. On October 1, Plaintiff was unlawfully arrested without probable cause and without any attempt made by officers to obtain identification, in violation of Texas Penal Code § 38.02, federal constitutional standards, and clearly established law. Plaintiff's automobile was seized, and personal belongings was searched without proper consent and due process of law. Terry v. Ohio, 392 U.S. 1 (1968), and Devenpeck v. Alford, 543 U.S. 146 (2004).

13. Defendant Officer unlawfully initiated a traffic stop against Plaintiff without reasonable suspicion, instead relying on racial profiling to justify an arbitrary stop. At the time Defendant Officer began following Plaintiff in Unit 814, he could not see the vehicle's registration sticker due to its placement on the driver's side window while he was initially positioned on the passenger side. Rather than observing an actual violation, Defendant Officer targeted Plaintiff based on appearance, ran the license plate without cause, and then initiated a stop. This constitutes racial profiling in violation of the Equal Protection Clause of the Fourteenth Amendment and a pre-textual stop prohibited under Whren v. United States, 517 U.S. 806 (1996).

14. Within less than one minute, Defendant Officer Cox effectuated an arrest without any lawful investigation or probable cause determination. At no point did Defendant Officer verify Plaintiff's registration, request a CDL, or ask for Plaintiff's name or date of birth.

4

The immediate arrest, made without establishing any actual violation, constitutes an unlawful seizure under the Fourth Amendment, violating Beck v. Ohio, 379 U.S. 89 (1964), which requires probable cause prior to arrest. Further, under Dunaway v. New York, 442 U.S. 200 (1979), an arrest made without investigation or articulable suspicion is unconstitutional.

15. Defendant Officer's actions were malicious, abusive, and in deliberate disregard of Plaintiff's constitutional rights. The racially motivated stop and immediate, baseless arrest resulted in unlawful detention, emotional distress, and lasting harm. The arrest and all subsequent actions were fruit of the poisonous tree under Wong Sun v. United States, 371 U.S. 471 (1963). Because Defendant Officer violated clearly established law, qualified immunity does not apply, and Plaintiff seeks full accountability under 42 U.S.C. § 1983.

16. Defendant officers unlawfully threatened Plaintiff with arrest, coercing compliance under duress, in violation of clearly established law that prohibits law enforcement from using threats, intimidation, or coercion to force compliance with unlawful demands." U.S. v. Hale, 978 F.2d 1016 (8th Cir. 1992)

17. Plaintiff was falsely charged with "Failure to Identify," despite no legal basis or opportunity for identification.

18. The police officers involved did not attempt to identify Plaintiff by name or date of birth, further violating Plaintiff's Fourth Amendment rights as outlined in Terry v. Ohio, 392 U.S. 1 (1968).

5

19. Defendant officers were explicitly informed that Plaintiff did not have a standard driver's license but instead held a Commercial Driver's License (CDL). Despite this, they failed to request or verify the CDL before effectuating an unlawful arrest. Under Texas law, an individual cannot simultaneously hold both a driver's license and a CDL (Texas Transportation Code § 522.021), making their failure to investigate further a clear violation of due process and proper procedure.

20. Defendant Officers also unlawfully and violently confiscated Plaintiff's phone from hand in order to prevent recording of the unlawful actions and removed plaintiff from personal automobile against plaintiffs' free will. Violating Plaintiff's First Amendment rights under Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011), which protects the right to record police officers performing their official duties in public and deprivation of fundamental liberties.

21. After the unlawful arrest, plaintiff was subjected to physical injury, bruising, and cruel treatment at the Johnson Detention Facility despite not being combative nor belligerent in any way shape nor form.

22. During detention, Plaintiff sustained bodily injury, bruising and was subjected to sexual humiliation, and forcibly stripped while being recorded by a male guard, in violation of constitutional protections against cruel and unusual punishment (8th Amendment) and privacy rights (4th and 14th Amendments).

23. Plaintiff was further placed in a filthy isolation cell, surrounded by urine, feces, and unbearable odor, which caused Plaintiff to vomit and nearly lose consciousness while bare foot.

24. Plaintiff was not offered medical evaluation, despite indicating the possibility of pregnancy and showing clear signs of physical and emotional distress. Plaintiff sought medical attention after being released from the Johnson Detention facility.

25. Plaintiff was threatened with a taser to compel compliance with unlawful procedures, amounting to coercion under color of law and unreasonable force despite plaintiff not showing any signs of aggression for such inhumane treatment.

26. The arresting officer Justin Cox marked "NO" on the citation under "Was there an arrest?", constituting fraudulent documentation and an attempt to conceal the illegal arrest. Displaying smirks and laughter during the arrest; demonstrating deliberate indifference and malicious intent.

27. Defendant Chief of Police Shawn Fullagar, dismissed Plaintiff's complaint regarding these violations, closing the investigation without further action, and failing to hold the officers accountable.

28. Defendant clerk of court Carla Bonham has improperly proceeded with prosecuting this citation despite lack of subject matter jurisdiction and personal jurisdiction. Also refuses to file plaintiff's notices and lawful pleadings by calling them complaints and threatening plaintiff with arrest warrants.

29. Defendant prosecutor Amanda K. Davis that works for the law firm representing Joshua Police Department and City secretary have coordinated together to further withhold F.O.I.A. requests that includes crucial evidence such as the police reports, police body cams including

audio, proper oaths of office for public transparency, as well as failing to uphold basic procedural protections in violation of established case law during these court proceedings that are being held in a back office.

30. Plaintiff has evidence of the violations, including video footage with audio documentation from both the police and detention facility, and written communications via email showing abuse of power and systemic misconduct.

### Impact of Defendants' Actions on Plaintiff and Family

31. As a direct result of Defendants' actions, Plaintiff has experienced substantial interference with daily life, employment, and overall well-being. Before the events in question, Plaintiff was fully capable of managing personal and professional responsibilities without issue. However, due to the unlawful arrest, deprivation of property, and improper seizure of Plaintiff's automobile and personal belongings, Plaintiff has endured tangible harm affecting livelihood, stability, and the ability to exercise constitutional rights without obstruction.

32. Had Plaintiff's minor children been present at the time of arrest, Defendants' reckless actions could have resulted in their unlawful removal and involvement with Child Protective Services (CPS). The arbitrary seizure of Plaintiff's personal vehicle—without due process—could have left Plaintiff's children without transportation or placed them in a distressing and traumatic situation, directly impacting their well-being. Courts have recognized that parental rights are constitutionally protected under the Fourteenth Amendment, and the wrongful separation of a parent from their children, particularly due to state misconduct,

constitutes a significant deprivation of liberty, as held in Doe v. Heck, 327 F.3d 492 (7th Cir. 2003). The foreseeable risk of such an outcome underscores the recklessness and negligence of Defendants' conduct.

33. Furthermore, the judge presiding over the traffic-related proceedings is an attorney with a law firm that maintains professional ties with CPS, parental rights termination cases, and the foster care system, raising concerns regarding impartiality and potential conflicts of interest. Judicial officers are required to avoid even the appearance of bias, as established in Tumey v. Ohio, 273 U.S. 510 (1927), which holds that due process is violated when a judge has a direct or indirect interest in the outcome of a case. The overlap between the judge's legal practice and matters involving CPS raises significant questions regarding the fairness and neutrality of the proceedings, particularly given the potential impact on Plaintiff's parental rights.

34. The psychological and emotional impact of Defendants' conduct is a foreseeable consequence of their actions and is legally recognized under Carey v. Piphus, 435 U.S. 247 (1978) as compensable harm resulting from constitutional violations. The prolonged legal battle and Defendants' failure to remedy these violations have forced Plaintiff to engage in repeated legal efforts to seek relief, causing additional strain that directly stems from the initial unlawful acts.

35. Plaintiff remains fully competent to participate in legal proceedings and is not alleging any preexisting condition or incapacity. Rather, Plaintiff asserts that Defendants' actions have resulted in measurable harm that warrants relief under federal law, as the continued suppression

of due process rights and failure to remedy these violations have exacerbated the impact of the initial unlawful acts.

36. Defendants' reckless and unconstitutional actions not only deprived Plaintiff of liberty and property but also placed Plaintiff's family at risk, as the unlawful arrest and detention could have led to Child Protective Services unjustly seizing Plaintiff's children. Such deprivation would have compounded the violation of due process rights under the Fourteenth Amendment, as recognized in Doe v. Heck, 327 F.3d 492 (7th Cir. 2003), where state actors cannot interfere with parental rights without due process and just cause.

37. The judge presiding over Plaintiff's case lacked a valid oath of office at the time she began issuing rulings, as evidenced by the Clerk of Court producing an oath dated February 2025—months after Plaintiff's unlawful arrest in October 2024 and long after she had already exercised judicial authority. This proves that for months, the judge was acting without legal authority, rendering all proceedings null and void under Norton v. Shelby County, 118 U.S. 425 (1886). The sudden production of an oath only after Plaintiff raised the issue is clear evidence of fraud and racketeering, as multiple court officials are knowingly engaging in malicious prosecution under color of law in violation of **18 U.S.C. §§ 242, 1962 (RICO Act).** Because the court has no lawful jurisdiction, this case must be immediately dismissed with prejudice.

## V. QUALIFIED IMMUNITY DOES NOT APPLY

38. Plaintiff affirmatively asserts that qualified immunity does not shield the Defendants in this matter, as the actions taken against Plaintiff were knowingly unlawful, objectively unreasonable,

and outside the scope of discretionary functions. The constitutional rights violated — including the rights to be free from unlawful arrest, excessive force, cruel and unusual punishment, retaliatory prosecution, and denial of due process — are clearly established under federal law.

39. Qualified immunity fails when a reasonable officer or official would have known that their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800 (1982); Hope v. Pelzer, 536 U.S. 730 (2002).

40. Additionally, in Malley v. Briggs, 475 U.S. 335 (1986), the Court held that "[i]f officers of reasonable competence could disagree on [the legality of their actions], immunity should be denied." Here, the conduct was not merely a discretionary mistake, but a deliberate, malicious abuse of authority under color of law, executed with reckless disregard for Plaintiff's rights.

41. Further, the Supreme Court has made clear that "qualified immunity is not a license to act with impunity" (Ziglar v. Abbasi, 582 U.S. 120 (2017)), and officers cannot violate their own internal policies, training protocols, or legal standards and claim protection under qualified immunity. Courts have repeatedly held that when public officials "act in bad faith, with malice, or outside the bounds of lawful authority," immunity does not apply.

42. Defendants' actions were not in good faith, nor in compliance with policy, but were tyrannical, retaliatory, and carried out with deliberate indifference, warranting not only denial of immunity, but also heightened liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

43. Defendants cannot invoke qualified immunity, and such a defense should be preemptively disqualified based on the undisputed, egregious violations of clearly established law and constitutional protections.

## V.     CAUSES OF ACTION

**Count 1 – Unlawful Arrest (Fourth Amendment, § 1983)**

The arrest of Plaintiff was made without probable cause or reasonable suspicion, violating Plaintiff's rights under the Fourth Amendment of the United States Constitution, as held in Terry v. Ohio, 392 U.S. 1 (1968), and Devenpeck v. Alford, 543 U.S. 146 (2004). The actions of the Defendants in arresting Plaintiff without probable cause were unconstitutional, and Plaintiff is entitled to relief under 42 U.S.C. § 1983.

**Count 2 – Excessive Force and Cruel and Unusual Punishment (Eighth Amendment, § 1983)**

Plaintiff was subjected to excessive force during their arrest and incarceration, including bodily injury sustained in detention, constituting a violation of the Fourth Amendment prohibition against unreasonable seizures and the Eighth Amendment prohibition against cruel and unusual punishment. The Defendants' conduct further violates the principles established in Graham v. Connor, 490 U.S. 386 (1989), and Tennessee v. Garner, 471 U.S. 1 (1985), regarding the use of excessive force and the treatment of individuals during arrest.

**Count 3 – Procedural and Substantive Due Process Violations (Fifth and Fourteenth Amendments, § 1983)**

The municipal court has continued to prosecute Plaintiff despite failing to establish proper jurisdiction, violating Plaintiff's due process rights under the Fourteenth Amendment.

As held in Brady v. Maryland, 373 U.S. 83 (1963), and Mooney v. Holohan, 294 U.S. 103 (1935), withholding evidence and failing to follow procedural safeguards constitutes a violation of due process.

**Count 4 - First Amendment Violation (Right to Record Police Officers)**

Plaintiff's rights under the First Amendment were violated when their phone was confiscated and they were prevented from recording the unlawful actions of the police officers, in violation of Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011). The actions of the Defendants unlawfully interfered with Plaintiff's right to record matters of public concern.

**Count 5 – Failure to Intervene and Supervisory Liability (Monell Claim, § 1983)**

The municipality is liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), as its failure to train, supervise, and discipline officers for misconduct created a policy or custom of deliberate indifference to constitutional violations. Supervisory officials knowingly allowed officers to engage in misconduct without accountability, leading to the unlawful and retaliatory arrest of the plaintiff. Under Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988), a municipality may be liable where a failure to supervise or discipline officers fosters an

environment of lawlessness. Additionally, the failure of multiple officers to intervene during the wrongful arrest and subsequent abuse violates clearly established law under Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972), which holds that officers have an affirmative duty to intervene when witnessing constitutional violations. This systemic failure to act demonstrates an unconstitutional municipal policy under City of Canton v. Harris, 489 U.S. 378 (1989), where deliberate indifference in training or supervision results in foreseeable constitutional harm.

**Count 6 – Obstruction of Access to Courts and Malicious Abuse of Process (First and Fourteenth Amendments, § 1983)**

Defendants violated the Plaintiff's rights under the Fifth and Fourteenth Amendments by obstructing access to the courts and engaging in malicious abuse of process to suppress legitimate legal claims. Under Christopher v. Harbury, 536 U.S. 403 (2002), the right of access to the courts is fundamental, and government actors who intentionally hinder this right commit a constitutional violation. Defendants, acting under color of law, unlawfully suppressed filings, denied procedural due process, and manipulated judicial proceedings to protect misconduct, thereby abusing legal mechanisms for retaliatory purposes. Their actions constitute malicious abuse of process, as established in Heck v. Humphrey, 512 U.S. 477 (1994), where misuse of legal procedures to achieve an unlawful goal violates constitutional protections.

**Count 7 – Deprivation of Liberty and Property without Due Process (Fifth and Fourteenth Amendments)** Defendants, acting under color of law, unlawfully deprived Plaintiff of property and liberty without due process in violation of the Fourth, Fifth, and Fourteenth Amendments by

executing a retaliatory arrest, seizing Plaintiff's automobile, and conducting an unlawful search of personal belongings. Under Fuentes v. Shevin, 407 U.S. 67 (1972), due process requires that a person be given notice and an opportunity to be heard before being deprived of their property. Additionally, the Supreme Court in Albright v. Oliver, 510 U.S. 266 (1994) affirmed that a retaliatory and baseless arrest violates substantive due process protections. Defendants' actions were arbitrary, oppressive, and lacked lawful justification, demonstrating a willful disregard for Plaintiff's constitutional rights, warranting relief under Armstrong v. Squadrito, 152 F.3d 564 (7th Cir. 1998), which holds that prolonged detention and deprivation of property without procedural safeguards constitute a due process violation.

## VI.   REQUEST FOR TEMPORARY RESTRAINING ORDER & INJUNCTIVE RELIEF

1. Plaintiff requests this Court immediately issue a Temporary Restraining Order (TRO) and preliminary injunction to:
2. Prohibit Defendants from issuing any warrants, detaining, harassing, or retaliating against Plaintiff while this lawsuit is pending.

3. Bar any further municipal court proceedings or enforcement actions stemming from the fraudulent citation or arrest until this matter is resolved federally.

4. Protect Plaintiff's constitutional rights and prevent irreparable harm, as continued prosecution and threat of arrest constitute ongoing injury.

### VII.   DAMAGES AND PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

5. Grant compensatory and punitive damages for the violations of Plaintiff's constitutional rights.

6. Issue a permanent injunction to prevent any further retaliatory actions or harassment by the Defendants.

7. Issue a restraining order preventing the Defendants from attempting to arrest or prosecute Plaintiff while this lawsuit is pending.

8. Declaratory relief that Defendants acted unlawfully and unconstitutionally.

9. Costs of litigation, filing fees, medical expenses, emotional distress and lost oppurtunity.

10. Injunctive relief as outlined above.

11. Grant any other relief the Court deems just and proper.

12. Grant proper servive via U.S. Marshall.

Respectfully submitted,

Erin Scoles

P.O. Box 131 Keene, TX 76059

682-378-4201

Scoles.erin@gmail.com

March 25, 2025

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**
Joshua Police Department, County of Johnson

**(b)** County of Residence of First Listed Plaintiff: Johnson
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Johnson
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

RECEIVED
MAR 25 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Attorneys *(If Known)*
Brown and Hofmeister, LLP
Amanda Davis

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **INTELLECTUAL PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander |  | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability |  | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine |  | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** / **LABOR** | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / 370 Other Fraud | 710 Fair Labor Standards Act | 880 Defend Trade Secrets Act of 2016 | [x] 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 371 Truth in Lending | 720 Labor/Management Relations | **SOCIAL SECURITY** | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury / 380 Other Personal Property Damage | 740 Railway Labor Act | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice / 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 862 Black Lung (923) | 490 Cable/Sat TV |
| 196 Franchise |  |  | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | 790 Other Labor Litigation | 864 SSID Title XVI | 890 Other Statutory Actions |
| 210 Land Condemnation | [x] 440 Other Civil Rights / **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 865 RSI (405(g)) | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee |  |  | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 442 Employment / 510 Motions to Vacate Sentence |  | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations / 530 General |  | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment / 535 Death Penalty |  | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** |  | 950 Constitutionality of State Statutes |
|  | 448 Education / 540 Mandamus & Other | 462 Naturalization Application |  |  |
|  | 550 Civil Rights | 465 Other Immigration Actions |  |  |
|  | 555 Prison Condition |  |  |  |
|  | 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause:
42 USC 1983

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 42 USC 1983

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____